United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 5, 2005**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 04-10435

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

EDDIE ARNOLD,

Defendant-Appellant.

———————

Appeal from the United States District Court
for the Northern District of Texas

———————

Before GARWOOD, SMITH, and CLEMENT,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Eddie Arnold challenges his conviction of and sentencing for his participation in a methamphetamine narcotics conspiracy. Finding no error, we affirm.

I.

Arnold was indicted for his alleged participation in a narcotics distribution conspiracy involving 500 grams or more of a mixture of a substance containing a detectible amount of methamphetamine, in violation of 21 U.S.C. § 846. The government's star witness was one of Arnold's co-defendants, Clint McMillan, who testified that they had agreed to buy and sell methamphetamine for profit. McMillan stated they obtained the drugs from Steven O'Neal, and Arnold's residence was used to hide the drugs. They did four to six deals together, involving a total of approximately five pounds of methamphetamine.

McMillan testified that on November 26, he drove with Arnold to the hotel where O'Neal

was staying and that he met with O'Neal alone while Arnold remained in McMillan's vehicle. After obtaining approximately a pound of methamphetamine and some marijuana, McMillan returned to his truck and either concealed the drugs under the cup holder in the center console himself, or gave them to Arnold to put away.

Surveillance officers observed McMillan's drug buy and advised another officer to stop McMillan's truck. After the officer turned on his siren, McMillan drove another two miles while he and Arnold discussed what they were going to doSSincluding a possible plan for Arnold to run into the adjacent woods to dispose of the narcotics. The officer observed that McMillan and Arnold appeared very nervous after the stop. After arresting McMillan, the officer searched the truck and discovered the narcotics under the center console.

The district court instructed the jurors on the elements of a controlled substances conspiracy under § 846:

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First: That two or more persons, directly or indirectly, reached an agreement to possess with intent to distribute methamphetamine;
>
> Second: That the defendant knew of the unlawful purpose of the agreement; and
>
> Third: That the defendant joined in the agreement wilfully, that is, with the intent to further its unlawful purpose.

After explaining some other details regarding a conspiracy charge, the court set forth the el-

ements of the underlying charge of possession of methamphetamine with the intent to distribute charge under 21 U.S.C. § 841(a)(1):

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First: That the defendant knowingly possessed a controlled substance;
>
> Second: That the substance was in fact methamphetamine; and
>
> Third: That the defendant possessed the methamphetamine with the intent to distribute it.

The quantity of drugs involved was not mentioned until the very end, in a different sectionSSoutside the description of a § 841(a)(1) chargeSSin which the court stated:

> If you find the defendant guilty of the One Count indictment, you must respond to some questions to decide whether the crimes involved certain quantities of drugs which are referred to in the criminal statute.
>
> In answering these questions, as in deciding your verdict, you must be unanimous, and in order to decide that the count involved a certain quantity of drugs you must be satisfied that the government has proven that quantity by proof beyond a reasonable doubt. The term quantity means the total weight of any mixtures or substances which contain a detectable amount of the drug charged. In making this decision, you should consider all drugs which members of the conspiracy actually distributed or intended to distribute as part of the alleged conspiracy.

2

The last sentence in the quantity instruction initially read: "In making this decision, you should consider all drugs which members of the conspiracy actually distributed or intended to distribute," omitting "as part of the alleged conspiracy" at the end. Arnold objected, wishing for the instruction to include reference to the indictment,[1] because he was worried about the jury's considering evidence that was presented regarding drug transactions outside of the conspiracy that was found to be admissible under Federal Rule of Evidence 404(b).

The government acknowledged that the similar-acts evidence was outside the scope of conspiracy and not to be considered by the jury. The government expressed concern, however, that the modification requested by Arnold might mislead the jury into thinking that it could consider only the drug quantities alleged in the overt-acts portion of the indictment. The government considered such a reading to be incorrect, because the jury could consider any drug quantitiesSSeven if not alleged in the indictmentSSso long as it found beyond a reasonable doubt that they were part of the conspiracy.

The court rejected the specific wording suggested by Arnold, but noting the concern Arnold had expressed, the court appended the words "as part of the alleged conspiracy" to the end of the instruction.[2] Arnold preserved

his objection.

The verdict form included three interrogatories. In the first, the jury indicated that it found Arnold "guilty" of the offense charged in count 1 (the § 841(a)(1) conspiracy charge). The second asked that if the jury found in the first question that Arnold was guilty, if they then "unanimously agree, by proof beyond a reasonable doubt, that the quantity of methamphetamine which was distributed and/or distributed as part of the conspiracy was 500 grams or more." The jury checked "No." The last question inquired: "If you do not find that the quantity of methamphetamine which was manufactured, distributed and/or intended to be distributed as part of the conspiracy was 500 grams or more, what quantity do you find was proven beyond a reasonable doubt?" The jury wrote "456.88 grams" in the blank that followed.

Based on the jury's findings, the court entered a judgment of conviction for a methamphetamine distribution conspiracy involving fifty grams or more. The court denied Arnold's motion for a new trial under Federal Rule of Criminal Procedure 33(a), and sentenced Arnold to sixty-three months' imprisonment.

II.

Arnold brings two challenges to the instructions. He alleges that the district court erred by (1) not including lesser-included offenses in the jury charge and (2) omitting language stating that drug quantities should be found "as alleged in the indictment." We examine each in turn.

---

[1] Arnold wished for the instruction to read as follows: "In making this decision, you should consider all drugs which members of the conspiracy actually distributed or intended to distribute, *as alleged in the indictment.*"

[2] The court stated that its goal was to "find some language that, as [the defendant was] talking about, cabins this to what's alleged in the indict-
(continued...)

---

[2](...continued)
ment without restricting it to the overt acts."

3

### A.

Arnold argues that the district court erred in not including instructions on lesser-included offenses, including (1) conspiracy to possess with the intent to distribute at least fifty grams of a mixture of a substance containing a detectible amount of methamphetamine, 21 U.S.C. § 841(b)(1)(B)(viii); (2) conspiracy to possess with the intent to distribute less than fifty grams of a mixture of a substance containing a detectible amount of methamphetamine, *id.* § 841(b)(1)(C); or (3) simple possession of a controlled substance, *id.* § 844(a). We address that contention below.

### 1.

The parties dispute the standard of review applicable to this challenge. Arnold asserts he properly objected, so we should review the denial of the lesser-included offenses for abuse of discretion; the government reasons that we should review for plain error because Arnold did not adequately object. Arnold claims he objected when he requested that the charge require the jury to find quantity "as alleged in the indictment." Although he acknowledges that the request "did not specify the remedy of lesser included instructions," he claims we should construe it as such because the challenge would have "brought the issue of lower offenses to the trial court's attention."

We side with the government on this standard-of-review issue, so we review for plain error, because Arnold's objection was not specific enough to bring this alleged error to the court's attention.[3] Although the objection to the form of the instruction broadly dealt with the issue of drug quantities, and different quantity findings support different lesser-included offenses, the objection that was made sought to narrow the grounds for conviction (by adding the limiting language "as alleged in the indictment"), whereas a request for lesser-included offenses seeks to broaden grounds for conviction by giving the jury more options for returning a guilty verdict.

Under the plain error standard, we may not correct an error that the defendant failed to raise unless "there is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Cotton*, 535 U.S. 625, 631 (2002) (internal citations omitted). "If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal citations omitted).

### 2.

"We consider whether the jury instruction, taken as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *United States v. Guidry,* 406 F.3d 314, 321 (5th Cir. 2005) (citing *United States v. Daniels*, 281 F.3d 168, 183 (5th Cir. 2002)). The denial of a requested jury instruction amounts to reversible error only if three conditions are met: "(1) [T]he [requested] instruction is substantively correct; (2) it is not substantially cov-

---

[3] *See United States v. Krout*, 66 F.3d 1420, 1434 (5th Cir. 1995) (finding that an imprecise objection is insufficient to preserve claimed error for review); *United States v. Heath,* 970 F.2d 1397, 1407 (5th Cir. 1992) (reviewing under plain error (continued...)

[3](...continued) standard where defendant objected to instruction before district court on different grounds, noting that "[a] party may not state one ground when objecting to an instruction and attempt to rely on a different ground for the objection on appeal").

ered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that failure to give it seriously impairs the defendant's ability to present a given defense effectively." *United States v. Hunt*, 794 F.2d 1095, 1097 (5th Cir. 1986).

The first prong of the *Hunt* test is not contested; the government concedes that Arnold was *eligible* to be convicted of a lesser-included offense (for, after all, he was found to be convicted on a lesser-included offense than that for which he was indicted). Lesser-included offense instructions are substantively correct in this case.

Arnold's claim fails, however,[4] because the charge given did in fact substantially cover Arnold's eligibility to be convicted of a lesser-included offense. The lesser-included offenses for which Arnold claims eligibility involve lower amounts of drugs attributable to the scope of the conspiracy, and that was adequately addressed by the special interrogatory that asked the jury to indicate the total amount of drugs it believed were shown, beyond a reasonable doubt, to be within the scope of the conspiracy. This approach SSusing a special interrogatory to determine drug quantitySSis endorsed in the note to Fifth Circuit Pattern Instruction § 2.89, and we find its use appropriate.[5]

---

[4] Because Arnold's claim fails at this level, we do not need to consider the third prong of the *Hunt* test.

[5] According to the note,

[t]he fourth element, prompted by the *Apprendi* doctrine, is required when the indictment alleges a quantity that would result in an enhanced penalty under 21 U.S.C. § 841(b). Generally,
(continued...)

### B.

Arnold claims the district court erred by omitting instructions from the charge that quantities should be found "as alleged in the indictment." Because Arnold properly objected to the refusal to give the instruction, we review for abuse of discretion. *See Guidry*, 406 F.3d at 321; *see also Daniels*, 281 F.3d at 183.

Arnold wanted the court to instruct the jury to consider all drugs that members of the conspiracy distributed or intended to distribute "as alleged in the indictment" instead of the language the court used, "as part of the alleged conspiracy." In the district court, Arnold asserted that his requested language was necessary because otherwise, in reaching its determination of quantity, the jury might prejudicially consider similar acts evidence of drug transactions outside of the charged conspiracy

---

[5](...continued)
the exact quantity of the controlled substance need not be determined so long as the jury establishes a quantity at or above a given baseline amount in the appropriate subsection of § 841(b). For example, in a marijuana case, if the amount is determined to be at least 100 kilograms, the maximum sentence would be the same for any amount up to 999 kilograms. However, if there is a fact dispute as to whether the amount is above or below a particular baseline (e.g., 100 kilograms of marijuana versus 99 kilograms), the court may consider submitting the higher amount in the fourth element, accompanied by a Lesser Included Offense instruction, No. 1.33, for the lower amount. *Alternatively, the court may substitute for the fourth element a special interrogatory on the verdict form asking the jury to determine the exact amount of the controlled substance.*"

(Emphasis added.) (Internal citations omitted.)

that was admissible under rule 404(b) for showing motive, knowledge or intent.

Although Arnold is correct in noting that the jury could not consider quantities outside the *conspiracy* alleged in the indictment, his concern was adequately and substantially covered by the instruction's limitation that only quantities the jury found beyond a reasonable doubt to be "part of the alleged conspiracy" could be considered. In fact, the instruction eliminated the risk, highlighted by the government before the district court, of confusing the jury into thinking it was cabined into considering only the specific drug quantities mentioned in the overt acts section of the indictment, contrary to law.[6] Arnold's proffered instruction appears only to be a small variance in word choice from that given by the district court and is not error.[7]

### III.

Arnold brings two challenges to the specific conviction that the district court adjudged after it received the completed jury verdict form. He contends the court erred by (1) convicting and imposing sentence for a lesser-included offense that was not submitted to the jury; and in the alternative, (2) failing to enter conviction and assess punishment at the maximum for the least severe offense, because the verdict was ambiguous as to the offense of conviction. We examine each in turn.

---

[6] *United States v. Wilson*, 657 F.2d 755, 763 (5th Cir. Unit A Sept. 1981) ("[T]he government is not limited in its proof of a conspiracy to the overt acts alleged in the indictment.").

[7] *See United States v. Hudson*, 982 F.2d 160, 162 (5th Cir. 1993) (finding no error for the district court to reject the exact requested wording where the issue is already covered).

### A.

Arnold argues that the court erred in entering a conviction for conspiracy to possess with intent to distribute at least fifty grams of a mixture of a substance containing a detectible amount of methamphetamine, where (1) a conspiracy to distribute at least 500 grams was alleged in the indictment; (2) the jury explicitly found that the government had failed to prove beyond a reasonable doubt that more than 500 grams were attributable to the alleged conspiracy; and (3) there was lack of an instruction for the lesser-included offense of which Arnold was ultimately convicted. Arnold concedes that we review his claim for plain error, because he did not object on these grounds.

Arnold's claim fails, because as we have discussed, the lesser-included offenses were necessarily included in the jury charge through the special interrogatory that asked the jury to declare the amount of methamphetamine it believed the government had proved, beyond a reasonable doubt, was part of the alleged conspiracy. The jury returned a finding of "456.88 grams," which obviously is greater than 50 grams. The district court did not err in entering a conviction for at least fifty grams, because the jury plainly found that the government had proved the elements of the § 846 conspiracy beyond a reasonable doubt, including a finding that at least fifty grams were involved in the underlying substantive narcotics offense.

### B.

Arnold alternatively argues that the court erred by failing to assess punishment for the least severe offense because of alleged ambiguity in the verdict as to the offense of convic-

tion.[8] We review for plain error because Arnold did not object to this alleged error in the district court.

Arnold claims that ambiguity exists because of an inherent contradiction between the jury's responses to the first two interrogatories. In response to the first question, the jury found Arnold "Guilty" of "the offense charged in Count 1." Count 1 alleged a conspiracy "to distribute five hundred (500) grams or more" of methamphetamine, so Arnold contends that the response to the first interrogatory included as a necessary jury finding that at least 500 grams were found to be part of the conspiracy beyond a reasonable doubt, because the quantity of drugs is an element of a § 841 offense.[9]

Then, Arnold points to the response to the second interrogatory, in which the jury indicated that it did *not* find, beyond a reasonable doubt, that the quantity of methamphetamine that was distributed and/or intended to be distributed as part of the conspiracy was 500 grams or more. Arnold asserts that this contradiction establishes ambiguity, and the court should not have sentenced him to more than the highest potentially applicable maximum

sentence, one year's imprisonment for simple possession of a controlled substance under § 844(a).

We reject this contention, because there is no inconsistency once the verdict form is closely scrutinized alongside the jury instructions. In explaining the elements of a § 841 offense, the court only enumerated three elements in the jury charge:

First: That the defendant knowingly possessed a controlled substance;

Second: That the substance was in fact methamphetamine; and

Third: That the defendant possessed the methamphetamine with the intent to distribute it.

Despite the fact that quantity is an element of the offense under *Doggett*, the jury was not aware of that when it responded to the first question, regarding whether Arnold was guilty of being a member of a conspiracy to violate § 841. Rather, the jury was instructed that the quantity of drugs was something that was to be considered only *after* it determined guilt under § 841.[10]

Though the jury form and instructions were incorrect to assert that Arnold was technically *guilty* of violating § 841 without a finding regarding drug quantities beyond a reasonable doubt, the jury was not aware of this, which explains the alleged ambiguity. Reading the

[8] *See United States v. Conley*, 349 F.3d 837, 840 (5th Cir. 2003) ("[W]here a jury verdict is ambiguous, a sentence imposed for a conviction on a count charging violations of multiple statute or provisions of statutes may not exceed the lowest of the potentially applicable maximums . . . ."); *see also United States v. Cooper*, 966 F.2d 936, 940 (5th Cir. 1992).

[9] *See United States v. Doggett*, 230 F.3d 160, 164 (5th Cir. 2000) (holding that drug quantity under § 841(b) is an element of a § 841 offense, despite Congressional intent otherwise, based upon *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

[10] According to the jury instructions, "[i]f you find the defendant guilty of the One Count indictment, you must respond to some questions to decide whether the crimes involved certain quantities of drugs which are referred to in the criminal statute."

jury form in this light, the jury never made a finding, explicit or implicit, that the drug quantity involved in the alleged conspiracy exceeded 500 grams; rather, it found (1) conspiracy as to the first three elements of a § 841 offense in the first interrogatory; (2) that there was not 500 grams or more of methamphetamine involved in the alleged conspiracy through its response to the second interrogatory; and (3) that there was at least 50 grams involved in the conspiracy by stating that the government had proved, beyond a reasonable doubt, that 456.88 grams of methamphetamine was attributable to the conspiracy. Arnold's claim fails, because there is no ambiguity that the jury found that all four elements of a § 841 charge were proven for a methamphetamine conspiracy that involved at least 50 grams.

## IV.

Arnold brings two challenges to the sufficiency of the evidence. He asserts (1) that he is entitled to a judgment of acquittal because the evidence was insufficient to prove a conspiracy; or alternatively (2) that he is entitled to a new trial based on his claim that the weight of the evidence does not support his conviction.

## A.

Arnold argues that the evidence was insufficient to support his conviction of conspiracy to possess with intent to distribute a controlled substance under § 846. In resolving a sufficiency of the evidence claim, we must decide whether a rational trier of fact could have found that each element of the charged criminal offense was proven beyond a reasonable doubt. *See United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998). We consider all the evidence in a light most favorable to the government, drawing all inferences and credibility choices in its favor. *Id.*

To establish a narcotics conspiracy, the government has the burden to prove the following three elements beyond a reasonable doubt: (1) an agreement between two or more persons to violate the narcotics laws; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the conspiracy. *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003), *cert. denied*, 540 U.S. 1207 (2004). Arnold contests the sufficiency of the evidence only as to the third element.

We reject Arnold's claim, because the government produced sufficient evidence that, if believed by the jury, demonstrated that he voluntarily participated in the conspiracy. McMillan testified that he agreed with Arnold to buy methamphetamine from O'Neal and split the profits. He also testified that as they were being stopped by the authorities, they plotted about hiding the drugs. Other circumstantial evidence supported Arnold's voluntary participation in the charged narcotics conspiracy. Patrick Combies testified that McMillan gave money to Arnold and that Arnold urged McMillan to get up and "get this taken care of" on the morning of the day of their arrest.

Arnold is correct to assert that mere presence and nervousness are insufficient to establish voluntary participation in a conspiracy,[11] but the evidence indicated more than that. McMillan testified that he and Arnold had an explicit agreement to procure and sell methamphetamine, which, alongside the other evidence regarding Arnold's presence and behavior, was sufficient to prove that an illicit agree-

---

[11] *See United States v. Tenorio*, 360 F.3d 491, 495 (5th Cir.), *cert. denied*, 124 S. Ct. 2899, *and cert. denied*, 124 S. Ct. 2900 (2004).

ment existed.[12]

Arnold argues that the jury found that the evidence only demonstrated presence and knowledge of the conspiracy, pointing to a question submitted by the jury asking whether knowledge alone is sufficient to establish a conspiratorial agreement. The fact that the jury submitted this question does not, however, show that the jury found that the evidence only demonstrated knowledge and presence, because the jury was then correctly instructed on the requirements for finding a conspiratorial agreement.[13] After being properly instructed on the law, we assume the jury obeyed its duty to find that all the elements were satisfied beyond a reasonable doubt, including the agreement element, which could have been found by a rational jury based on

McMillan's testimony.

Arnold also contends we should disregard McMillan's testimony because he was a co-defendant whose testimony was directly contradicted by other evidence. As long as it is not factually impossible or incredible, co-conspirator testimony is acceptable, even standing alone, to support a verdict.[14]

Arnold asserts that McMillan's testimony about the method of storing the methamphetamine (placing it under the console through the cupholder) was shown to be factually impossible based on an alleged obstruction demonstrated in videotape evidence. The district court, however, explicitly found that the videotape did not conclusively demonstrate that such an obstruction existed.

Evidence that may cast doubt on the credibility of testimony does not render it factually impossible, and it is the province of the jury to make such credibility determinations.[15] Moreover, even if Arnold is correct that evidence on the record plainly contradicts his testimony about the method in which the drugs were concealed in the vehicle, that only dealt with one small aspect of his incriminating testimony and does not negate his testimony regarding the previous agreement that was made jointly to obtain methamphetamine, sell it, and split

---

[12] *Id.* ("An agreement may be inferred from a concert of action, and presence along with other evidence can be relied on to find conspiratorial activity by the defendant.") (internal citations omitted).

[13] In response to the question, the jury was directed to the original jury instructions, a response that is acceptable if it contains an accurate statement of the law. *See, e.g., United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1098 (5th Cir. 1991) (finding that where court was assumed to have referred jury to accurate written charge in response to question, conviction not infirm because of alleged confusion). This is true here, where the instructions stated that an element of the crime was that "the defendant joined in the agreement wilfully," and noted that, "[m]ere presence at the scene of the event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy."

[14] *United States v. Medina*, 161 F.3d 867, 872-73 (5th Cir. 1998) ("As long as it is not factually insubstantial or incredible, the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the government in exchange for non-prosecution or leniency, may be constitutionally sufficient evidence to convict") (internal citations omitted).

[15] *See United States v. Schuchmann*, 84 F.3d 752, 756 (5th Cir. 1996).

the profits.[16]  The evidence is sufficient.

## B.

Arnold alternatively argues that even if the evidence could sufficiently support the verdict, he is nevertheless entitled to a new trial because the verdict was so irrational that it gives rise to a manifest injustice.  We review the denial of a  new trial for abuse of discretion.[17]

A court may grant a new trial if it is required in the interests of justice.  *See* FED. R. CRIM P. 33(a).  The trial judge may weigh the evidence and assess the credibility of the witnesses in considering the motion.  *See Robertson*, 110 F.3d at 1117 (citing *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982)).  Although a district court has broad discretion, it is not limitless, and it "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Id.* at 1118.  "The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict

stand." *Id.*[18]

### 1.

Arnold first argues that a new trial is warranted by pointing to evidence that casts doubt on McMillan's inculpatory testimony.  Although  this argument might have been appropriate in the district court in connection with a rule 33 new trial motionSSbecause that court has the authority to make its own determination regarding the credibility of witnessesSSit is inappropriate in this court, because we do not have such authority on appellate review.[19] The district court did not  abuse its discretion by accepting the jury's assessment of the credibility of the witnesses to deny a new trial on the ground that the verdict was against the weight of the evidence.  *See Dula*, 989 F.2d at 779.

### 2.

Next, Arnold proceeds to present a list of four "peculiar" factors that are part of the record on appeal and that he believes estab-

---

[16] Arnold argues that the fact that the jury responded to the interrogatory regarding the amount of drugs attributable to the conspiracy with the exact amount of methamphetamine located in the vehicle on the date of his arrest demonstrates that the jury did not believe that Arnold was part of the narcotics conspiracy before that dateSSand thus the only incriminating part of McMillan's testimony that should be considered on our sufficiency review involves the actions on the date of arrest.  This is incorrect; the fact that the jury may have found that the government was only able to attribute, *beyond a reasonable doubt*, the drugs found at arrest to the conspiracy is not inconsistent with testimony that an *agreement* was formed at a previous date to obtain and sell drugs.

[17] *See United States v. Infante*, 404 F.3d 376, 387 (5th Cir. 2005); *see also United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997).

[18] *See United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971) ("[T]he power to grant a new trial . . . should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.").

[19] *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005) ("In our capacity as an appellate court, we must not revisit evidence, reevaluate witness credibility, or attempt to reconcile seemingly contradictory evidence") (citing *United States v. Dula,* 989 F.2d 772, 778-79 (5th Cir. 1993)). This rule is sensible: The jury in the first instance, and the district court on rule 33 review , were in superior positions to evaluate the credibility of the witnesses, because they were able to  observe their demeanors.  *See United States v. Valentine*, 401 F.3d 609, 614 (5th Cir. 2005), *cert. denied*, 2005 U.S. LEXIS 4707 (U.S. June 13, 2005).

lished the extraordinary circumstances that justify a new trial under rule 33(a). We examine each in turn.

First, Arnold thinks it peculiar that he was found guilty of the conspiracy charge; he claims the jury "obviously" did not believe the "great majority" of McMillan's testimony, as exhibited by (1) the quantity determination in the special interrogatory and (2) the fact that the jury questioned his testimony about how Arnold helped him conceal the drugs by revisiting the videotape depicting where the drugs were found. The fact that the jury answered the special interrogatory with a drug quantity that only included the amount of drugs seized at the time of arrest does not necessarily mean the jury discredited most of McMillan's testimony; it rationally could have believed most of the testimony but merely thought that the government failed to prove *beyond a reasonable doubt* the other quantities of drugs to which McMillan testified, because the actual drugs were not admitted as evidence, and McMillan only gave an estimate as to the amount of drugs that were involved in previous transactions.

Similarly, the fact that the jury closely scrutinized a certain piece of evidence is not peculiar; instead, it can be a sign that the jury was fulfilling its duty to review the evidence closely. It does not undermine the ultimate finding that Arnold was guilty beyond a reasonable doubt.

Second, Arnold states that McMillan's testimony claiming that he helped him conceal the drugs should be disregarded as factually impossible. This claim should be disregarded, because as we have said, the district court did not abuse its discretion in finding that the videotape did not conclusively show that McMillan's testimony was factually impossible.

Next, Arnold points to the fact that the jury was confused on the law of conspiracy as a result of its "futile" request for clarification during deliberations. The assertion that the request was futile is without merit; the district court appropriately instructed the jury to look at the initial charge, which, as we have said, was sufficient. The court certainly did not abuse its discretion by denying a new trial on this ground; it was not peculiar that the jury asked for a clarification on an issue of law, something it is entitled to do.

Finally, Arnold asserts that the jury was confused by the verdict form, as demonstrated by the allegedly contradictory findings of guilt on the charged offense and a quantity finding corresponding to a lesser-included offense. As we have discussed, this assertion is without merit; the findings were not inconsistent when viewed in light of the context of the jury instructions. The district court did not abuse its discretion in accepting the verdict and denying a new trial.

V.

Arnold claims his sentence is infirm under *United States v. Booker*, 125 S. Ct. 738 (2005). He concedes that we review this claim for plain error, because he did not object on this ground.[20]

The district court's actions did not constitute *Booker* error at all, because Arnold's sentence was authorized *solely* based on facts found by a jury beyond a reasonable doubt. The district court did not engage in *any* fact-finding that increased Arnold's sentencing

---

[20] *See Guidry*, 404 F.3d at 322 (reviewing *Booker* error under plain error standard where defendant failed to object on *Apprendi/Blakely* Sixth Amendment grounds at sentencing).

11

range. The jury's explicit finding that the conspiracy involved 456.88 grams of methamphetamine authorized a base offense level of 30, which was adopted by the court in calculating Arnold's sentencing range. *See* U.S.S.G. § 2D1.1(a), (c)(5).[21] For there to be Sixth Amendment error under *Booker*, the judge must find facts not admitted by the defendant or found by a jury beyond a reasonable doubt, that *increases* the maximum potential sentence.[22]

In the absence of Sixth Amendment error, the most that Arnold could properly argue is that he nonetheless is entitled to be sentenced under an advisory, instead of mandatory, guideline regime. "Technically, this is a "*Fanfan* error, not a *Booker* error." *United States v. Martinez-Lugo*, 2005 U.S. App. LEXIS 10432, at *5 (5th Cir. June 7, 2005) (per curiam) (referring to Ducan Fanfan, the second defendant in the consolidated opinion in *Booker*). *See United States v. Villegas*, 404 F.3d 355, 364 (5th Cir. 2005) (per curiam)

(discussing the difference between *Booker* and *Fanfan* error).

Assuming there is *Fanfan* error here, the third prong of the plain-error test requires, under *Mares*, that "the defendant rather than the government bears the burden of persuasion with respect to prejudice." *Mares*, 402 F.3d at 521 (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)).[23] To show that his substantial rights are affected, Arnold would have to "point[] to . . . evidence in the record suggesting that the district court would have imposed a lesser sentence under an advisory guidelines system." *United States v. Taylor*, 409 F.3d 675, 677 (5th Cir. 2005) (per curiam) (citations omitted). In other words, "the pertinent question is whether [the defendant] demonstrated that the sentencing judgeSSsentencing under an advisory scheme rather than a mandatory oneSSwould have reached a significantly different result." *Mares*, 402 F.3d at 521. To meet this standard, the proponent of the error must demonstrate a probability "sufficient to undermine confidence in the outcome." *United States v. Dominguez Benitez*, 542 U.S. 74, __, 124 S. Ct. 2333, 2340 (2004).

---

[21] The guidelines, U.S.S.G. § 2D1.1(c)(5), authorize a base offense level of 30 where the amount of methamphetamine is "[a]t least 350 G but less than 500 G."

[22] *See, e.g., United States v. Mares*, 402 F.3d 511, 520-21 (5th Cir. 2005) (finding *Booker* error, although not plain, where "[the defendant's] sentence was enhanced based on findings made by the judge that went beyond the facts admitted by the defendant or found by the jury. The jury found that [the defendant], a felon, possessed ammunition. The judge enhanced the sentence based on a finding that his finding that [the defendant] was involved in a felony when he committed the offense. [The defendant] has therefore established *Booker* error"), *petition for cert. filed* (Mar. 31, 2005) (No. 04-9517); *see also Guidry*, 406 F.3d at 323.

[23] A showing of prejudice is required, because we have determined that *Booker* error is not structural error that would require no showing of prejudice. *United States v. Muhammad*, 2005 U.S. App. LEXIS 9078, at *3 (5th Cir. May 18, 2005) (per curiam) (unpublished). "[W]e reject [the] argument that *Booker* error is structural and insusceptible to harmless error analysis, and that *Booker* error should be presumed prejudicial, as both claims are in conflict with *Mares*." *United States v. Malveaux*, 2005 U.S. App. LEXIS 5960, at * 4 n.9 (5th Cir. Apr. 11, 2005) (per curiam). Neither *Booker* error nor *Fanfan* error is structural. *Martinez-Lugo*, 2005 U.S. App. LEXIS 10432, at *8.

Arnold has made no such showing, so the prejudice prong is not satisfied. He points only to stray remarks that show that the court had some sympathy for his situation, but this does not demonstrate that Arnold's substantial rights were affected by the imposition of sentence under the mistaken understanding that the guidelines were mandatory. His sentence in fact was reduced from the applicable guideline range because the court found that he played a minimal role in the offense.

AFFIRMED.