United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 29, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 05-30811

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MELVIN LEE MAYS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before SMITH, GARZA, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Melvin Lee Mays was convicted of five counts: (1) possession with intent to distribute 50 or more grams of cocaine base, (2) possession with intent to distribute powder cocaine, (3) carrying a firearm during a drug trafficking crime, (4) being a convicted felon in possession of a firearm, and (5) having been convicted of a crime of violence and being in possession of body armor. Mays was sentenced to life in prison. We affirm the conviction and sentence.

- 1 -

# I. FACTS AND PROCEEDINGS

Police officers conducted two controlled purchases of "crack" cocaine from an address in Shreveport, Louisiana. For the first transaction, a confidential informant allegedly purchased 0.3 grams of "crack" cocaine for $20 from a black male named "Melvin." For the second transaction, the same informant purchased 0.3 grams of "crack" cocaine for $20 from a black female whom the informant identified as "Melvin's mother." Officer Bo Lummus of the Shreveport Police Department prepared an affidavit to apply for a search warrant. The magistrate judge found probable cause and issued the warrant.

Police found and seized approximately 25 grams of powder cocaine and 72 grams of "crack" cocaine, as well as firearms, ammunition, a bulletproof vest, three digital scales, and a measuring cup in a duffel bag identified as belonging to Melvin Lee Mays. Mays was arrested. He filed a motion to suppress, alleging that the search warrant was not supported by probable cause. He also filed an objection to the notice filed by the Government alleging two prior felony narcotics convictions and one prior felony conviction for aggravated battery. Mays further filed a motion to sever the felon-in-possession charges from the remaining charges and post-verdict motions for a new trial and judgment of acquittal. Finally, Mays objected to an enhancement in his pre-sentence report based on a narcotics conviction he received when he was 17 years old but tried as an adult.

The district court denied all of Mays's motions and objections. Mays was convicted and sentenced to a mandatory life term on Count 1, 20 years on Count 2, five years on Count 3, ten years on Count 4, and three years on Count 5. Mays timely appealed.

# II. DISCUSSION

## A. Mays's sentence and *Roper*

Mays was convicted of possession with intent to distribute 50 grams or more of "crack" cocaine, or cocaine base, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(A). Any person who violates these statutes "after two or more prior convictions for a felony drug offense have become final . . . shall be sentenced to a mandatory term of life imprisonment without release." *Id.* § 841(b)(1)(A). At sentencing, Mays objected to the use of his 1992 adult felony conviction for possession of a Schedule II controlled substance, obtained in Louisiana state court when he was 17 years old, as a predicate offense for imposing a life sentence. He argues that use of this prior offense is cruel and unusual punishment under the Eighth Amendment as interpreted in *Roper v. Simmons*, 543 U.S. 551 (2005).

In *Roper*, the Supreme Court held that the Eighth and Fourteenth Amendments prohibit imposition of the death penalty on offenders who were under 18 when their crimes were committed. 543 U.S. at 578. The court reasoned in part that the "objective immaturity, vulnerability, and lack of true depravity" of persons under the age of 18 made the death penalty inappropriate. *Id.* at 573. The Court based its decision in large measure on the "special force" with which the Eighth Amendment applies when the state imposes the ultimate punishment of death. *Id.* at 568–69. Both the majority and dissent in *Roper* looked for a "national consensus" that the punishment imposed (death penalty for an individual who committed murder at age 17) contravened modern "standards of decency." *Roper*, 543 U.S. at 563–67, 608–09. Mays, however, has not proffered any evidence of a national consensus that sentencing enhancements to life imprisonment based, in part, on juvenile convictions contravene modern standards of decency. In fact, at the federal level, sentences are routinely enhanced under the sentencing guidelines based upon juvenile convictions, albeit not necessarily to a life sentence. U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(d)(2) (2004); *see also*

*United States v. Smith*, 440 F.3d 704, 709 (5th Cir. 2006) (holding that, since *Roper* concerned the Eighth Amendment's application to capital punishment of minors, it did not preclude a sentencing enhancement based upon juvenile convictions). There is not a national consensus that a sentencing enhancement to life imprisonment based, in part, upon a juvenile conviction contravenes modern standards of decency. *Roper*, therefore, is inapposite.

## B. Motion to sever

Mays also appeals the district court's denial of his motion to sever the felon-in-possession charges. We review the denial of a motion to sever charges for abuse of discretion. *See United States v. Bullock*, 71 F.3d 171, 174 (5th Cir. 1995). Rule 8(a) of the Federal Rules of Criminal Procedure provides that two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." We have construed Rule 8(a) liberally to effectuate its policy of permitting initial joinder of the defendant's charges. *United States v. Butler*, 429 F.3d 140, 146–47 (5th Cir. 2005); *Bullock*, 71 F.3d at 174 ("Joinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder."). Even if it is shown that initial joinder was improper, a defendant must also demonstrate "clear, specific and compelling prejudice that resulted in an unfair trial" in order to demonstrate reversible error. *Bullock*, 71 F.3d at 174.

Our caselaw has focused on the requirement in Rule 8(a) that the charged offenses be part of the "same act or transaction," and we have found abuse where that nexus was lacking. *See Butler*, 429 F.3d at 146–47 (holding that a "transaction" for purposes of Rule 8(a) "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon

- 4 -

their logical relationship"). We found no abuse in *Bullock* when a weapon was found in the trunk of the getaway car hours after a robbery. *See* 71 F.3d at 175. We reasoned that "a factfinder could infer that Bullock had the gun so that it would be available to him during the robbery and escape." *Id.* When firearms are found during the investigation of an offense, joinder of the gun charges is appropriate. *See id.* at 175 (citing *United States v. Fortenberry*, 919 F.2d 923, 926 (5th Cir. 1990); *United States v. Park*, 531 F.2d 754, 761 (5th Cir. 1976)). The transactional relationship between the charges is particularly strong here because the police found the cocaine, firearms, ammunition, and bulletproof vest pursuant to the same search warrant. Joinder was proper.

## C. Sufficiency of the evidence

When reviewing for sufficiency of the evidence, we ask whether, viewing the evidence in the light most favorable to the Government, a rational factfinder could have found the defendant guilty beyond a reasonable doubt of the elements of the offense. *See United States v. Cain*, 440 F.3d 672, 675 (5th Cir. 2006).

Mays argues that the Government did not provide sufficient evidence of intent to distribute. The evidence presented by the Government, however, is plainly sufficient for a reasonable jury to find that Mays intended to distribute the confiscated drugs. The firearms, body armor, scales, measuring cup, and baggies all qualify as "tools of the trade" that indicate that Mays did not intend to keep the cocaine base for personal use. *See, e.g.*, *United States v. Martinez*, 808 F.2d 1050, 1057 (5th Cir. 1987) (noting that "firearms are 'tools of the trade' of those engaged in illegal drug activities and are highly probative in proving criminal intent"); *United States v. Munoz*, 957 F.2d 171, 174 (5th Cir. 1992) (stating that intent to distribute may be inferred from, *inter alia*, the "presence of distribution paraphernalia"). Furthermore, "[t]he form and amount of the cocaine base recovered is some

evidence of an intent to distribute." *Cain*, 440 F.3d at 675. Here, the police seized approximately 25 grams of powder cocaine and 72 grams of "crack" cocaine. The powder cocaine was found divided and in plastic bags. The orchestrated purchases yielded 0.3 grams of cocaine base for $20. Assuming Mays could sell all 72 grams at that price, the total value of the cocaine base he possessed would be $4,800. *See United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1096 (5th Cir. 1991) (inferring intent from drug's quantity, purity, and value).

We have held in the past that the mere possession of a quantity of drugs inconsistent with personal use will suffice for the jury to find intent to distribute. *See United States v. Prieto-Tejas*, 779 F.2d 1098, 1101 (5th Cir. 1986) ("Intent to distribute a controlled substance may generally be inferred solely from possession of a large amount of the substance."). In *Prieto-Tejas*, we found 27.79 grams of 82 percent pure cocaine and 2.89 grams of 73 percent pure cocaine sufficient to give rise to an inference of intent to distribute. *See id.* (internal quotation omitted). Here the defendant possessed enough cocaine to make over 200 transactions similar to the controlled buys. The Government has provided sufficient evidence for a reasonable jury to conclude that it has met its burden of proving intent to distribute beyond a reasonable doubt.

**D.     Lesser-included-offense instructions**

A defendant is entitled to a lesser-included-offense instruction if "1) the elements of the lesser offense are a subset of the elements of the charged offense (statutory elements test), and 2) the evidence at trial permits a rational jury to find the defendant guilty of the lesser offense yet acquit him of the greater." *United States v. Avants*, 367 F.3d 433, 450 (5th Cir. 2004). The first prong of this test, examining the elements, is reviewed *de novo*, while the second prong, evaluating the sufficiency of the evidence for a finding of guilt on the lesser-included offense, is reviewed for abuse of

discretion. *See id.*

Mays argues that failing to include a lesser-included-offense instruction with respect to the quantity of drugs violates *Booker* and *United States v. Mares*, 402 F.3d 511 (5th Cir. 2005), because the drug quantity represents a factual finding that the jury would need to find beyond a reasonable doubt. This is incorrect. A constitutional problem would arise only if the court failed to instruct the jury that it needed to find that the defendant possessed 50 or more grams of "crack" cocaine, as that is the only element necessary for conviction under the statute. Here the jury instructions included sufficient language. "For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt . . . Fourth: That the quantity of the substance was at least 50 grams." Consequently, the district court did not err in declining to give a lesser-included-offense instruction as to drug quantity.

Mays also argues that he was entitled to a lesser-included-offense instruction for simple possession. Since Mays did not raise this objection before the trial court, we review for plain error. *United States v. Arnold*, 416 F.3d 349, 355 (5th Cir. 2005). For us to reverse on plain error review requires (1) error (2) that is plain, (3) affects the substantial rights of the defendant, and (4) "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

Possession of a controlled substance is undeniably a lesser-included offense of possession with intent to distribute. *See United States v. Garcia-Duarte*, 718 F.2d 42, 47 (5th Cir. 1983). Therefore, we need only consider whether "the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit of the greater." *Id.* (quoting *Keeble v. United States*, 412 U.S. 205, 208 (1973)). Under plain error review, we will not reverse a conviction for failure to give a lesser-included-offense instruction if defense counsel's decision in not requesting such an instruction

was strategic. *See United States v. Estrada-Fernandez*, 150 F.3d 491, 495–97 (5th Cir. 1998) (noting that, at a trial for assault with a "dangerous weapon," the defense focused totally on an alibi, rather than on whether the weapon used was a dangerous weapon). "In deciding whether to request [a lesser-included-offense] instruction, defense counsel must make a strategic choice: giving the instruction may decrease the chance that the jury will convict for the greater offense, but it also may decrease the chance of an outright acquittal." *Estrada-Fernandez*, 150 F.3d at 496 (alteration in original and internal quotation omitted). Here Mays's counsel made such a strategic choice and argued for outright acquittal. The failure to give lesser-included-offense instructions was not error.

**E.      Motion to suppress**

On appeal of the denial of a motion to suppress evidence, we review findings of fact for clear error and the ultimate legal conclusion of constitutionality *de novo*. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996). Our deference on matters of fact extends to credibility judgments made by the magistrate judge and accepted by the district court. *See United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005).

We apply a two-step test to determine whether to apply the exclusionary rule: first, we ask whether the good-faith exception to the rule applies, and second, we ask whether the warrant was supported by probable cause. *See United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993). If the good-faith exception applies, then we need not inquire whether probable cause existed, unless the case presents a "novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates." *Id.* (internal quotation omitted). No such novel question exists here.

The Supreme Court has held that "evidence obtained by officers in objectively reasonable

good-faith reliance upon a search warrant is admissible, even though the warrant was unsupported by probable cause." *Id.* (citing *United States v. Leon*, 468 U.S. 897, 922–23 (1984)). We will uphold an officer's good-faith reliance on a warrant unless one of four conditions apply:

> (1) the issuing-judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) the issuing-judge "wholly abandoned his judicial role" in such a manner that "no reasonably well trained officer should rely on the warrant"; (3) the underlying affidavit is "bare bones" ("so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"); or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid[.]"

*Gibbs*, 421 F.3d at 358 (quoting *Leon*, 468 U.S. at 923). Mays argues for the first condition based on testimony from Mays's mother at the suppression hearing that it was impossible for her to be behind the second controlled transaction at his residence, because she lived at a separate address, was disabled, did not deal drugs, and was not present at the residence at the time.

In evaluating this argument, we apply the standard from *Franks v. Delaware*, 438 U.S. 154 (1978), which requires a defendant to show that "(1) allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) the remaining portion of the affidavit is not sufficient to support a finding of probable cause." *United States v. Brown*, 298 F.3d 392, 395 (5th Cir. 2002). The second prong is often decisive, because even if the defendant proves that a statement was deliberately false or made with reckless disregard of its truth, he would still not prevail if the remainder of the affidavit set forth sufficient facts for a finding of probable cause. *See id.*

There is ample other evidence here–the recorded audio transmission, the informant's exchange of $20 for 0.3 grams of "crack" cocaine–that a second controlled buy occurred at the residence. Mays argues that the confidential informant never entered the residence nor did he identify drugs

inside the residence. However, at the suppression hearing, the magistrate judge reasonably concluded that two controlled purchases of "crack" cocaine at the back door of a residence give rise to probable cause to believe that contraband will be found inside.

Mays also argues that the affidavit for a warrant did not contain sufficient indicia of the confidential informant's credibility. We employ a four-part test to determine whether anonymous (or pseudonymous) information is reliable under the totality of the circumstances, including:

> (1) the nature of the information; (2) whether there has been an opportunity for the police to see or hear the matter reported; (3) the veracity and the basis of the knowledge of the informant; [and] (4) whether there has been any independent verification of the matters reported through police investigation.

*United States v. Morales*, 171 F.3d 978, 981–82 (5th Cir. 1999). Here the informant told the police that Mays's residence was a narcotics distribution center. The controlled buys later proved this information to be true, and Officer Lummus independently corroborated it through audio surveillance. The totality of the circumstances suggests that the affidavit contained sufficient indication of the informant's reliability. Therefore, the magistrate judge correctly denied Mays's motion to suppress.

### III. CONCLUSION

For the above-stated reasons, Mays's conviction and sentence are AFFIRMED.