# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2016

Lyle W. Cayce
Clerk

No. 15-10579

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

DAVID RODRIGUEZ, JOSE CAVAZOS, DANIEL LONGORIA,

Defendants–Appellants.

\* \* \* \* \*

No. 15-10590

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

TRAVIS KYNDALL LONGORIA,

Defendant–Appellant.

Appeals from the United States District Court
for the Northern District of Texas

No. 15-10579
No. 15-10590

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Defendants challenge, *inter alia*, the sufficiency of the evidence support-
ing their convictions of conspiracy to distribute or possess with intent to dis-
tribute marihuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. We find no
error and affirm.

I.

The defendants operated a marihuana importation and distribution
scheme in Abilene, Texas, from 2004 to 2014. The scheme followed a pattern,
beginning with Daniel Longoria—the owner of a mechanic's shop called Abi-
lene Automotive & Performance ("AA&P"). Daniel acquired marihuana from
suppliers in Mexico in return for money orders or from Fabricio Perez in Del
Rio, Texas, in a series of "fronting" exchanges.[1] Instead of collecting the mari-
huana personally, Daniel would solicit someone to act as a drug mule and
travel to Mexico or Del Rio to collect the marihuana, and he would furnish the
mule with a vehicle to transport the load.

The mule would not travel alone: Jose Cavazos (Daniel's brother-in-law)
or Travis Longoria (Daniel's son) would follow along to Mexico or Del Rio and
provide further instructions. Once the mule arrived at the pick-up location,
the suppliers would take the car and plant the marihuana in the vehicles pro-
vided by Daniel—for example, in the spare tire or gas tank. The mules would
attempt to return the load to AA&P, but law-enforcement agents often stopped
them in transit, seizing hundreds of pounds of marihuana. If the load reached

---

[1] Fronting refers to a process by which members of the illicit drug trade transfer
quantities essentially on credit.

No. 15-10579
No. 15-10590

AA&P, Cavazos—who worked there as a mechanic—and Daniel would break the vehicles down and remove marihuana from them.  Daniel would then store and distribute the marihuana throughout Abilene, including by transferring some to Travis and David Rodriguez for resale.

The Abilene Police Department, the Department of Homeland Security, and the Taylor County Sheriff's Department investigated the defendants through undercover informants,[2] direct surveillance, and searches of their trash and homes.  The searches recovered marihuana-distribution paraphernalia such as bongs, pipes, cash, marihuana, scales, baggies, saran wrap, gloves, burner phones, and firearms and ammunition.  Forensic searches of the phones revealed discussions about marihuana distribution.

A federal grand jury indicted Daniel, Travis, Cavazos, and Rodriguez for conspiracy to distribute or possess with intent to distribute more than 100 kilograms of marihuana.[3]  Rodriguez unsuccessfully moved to sever his case from his co-conspirators', arguing that the overwhelming evidence against them would spill over and infect the jury's consideration of his individual guilt or innocence.  The case proceeded to a joint trial at which the government offered testimony from twenty-six witnesses and physical evidence of the marihuana distribution.  At the close of the government's case, each defendant moved unsuccessfully for a judgment of acquittal under Federal Rule of Criminal Procedure 29.  Only Daniel and David offered witnesses, but each failed to renew his motion for judgment of acquittal.

The court instructed the jury at the end of the trial—over Rodriguez's

---

[2] For example, following Daniel's arrest in 2008, officers used him as an undercover informant against Fabricio Perez.

[3] Perez and another man, Brandon Johnson, were indicted, but both pleaded guilty.

objection—that it could find the defendants guilty of lesser-included offenses of conspiracy to distribute or possess with intent to distribute between fifty and 100 kilograms of marihuana or of less than fifty kilograms. The jury found Daniel, Travis, and Cavazos guilty as charged but found Rodriguez guilty only of the lesser-included charge of conspiring to distribute or possess with intent to distribute less than fifty kilograms.

## II.

We review "preserved challenges to the sufficiency of the evidence de novo." *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012). We "view all evidence, whether circumstantial or direct, in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict." *Id.* (internal quotation omitted). We determine only whether "a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" and are mindful that "[t]he jury retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Id.* (quotations omitted).

"The essential elements of a drug conspiracy are (1) an agreement by two or more persons to violate the narcotics laws; (2) a defendant's knowledge of the agreement; and (3) his voluntary participation in the agreement." *United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014) (en banc). "An agreement may be inferred from concert of action, voluntary participation may be inferred from a collection of circumstances, and knowledge may be inferred from surrounding circumstances." *Grant*, 683 F.3d at 643 (internal quotation omitted).

Each defendant urges that the evidence failed to establish an agreement or that the conspiracy involved more than 100 kilograms of marihuana. The

No. 15-10579
No. 15-10590

defendants—by pointing to the absence of proof that they expressly agreed or to the fact that police did not seize more than 100 kilograms of marihuana from any of them personally—ignore that the government may prove agreement, knowledge, participation, and the quantities involved by circumstantial evidence.[4]

Twenty-six government witnesses—unindicted co-conspirators, family members, and law-enforcement officers—testified to the distribution activities. Agent William Bloom testified about his undercover operations that implicated Daniel:  Bloom used Juan Collins as a mole while Juan Collins transported marihuana between Daniel and Perez.  Bloom himself went undercover and arranged drug transactions with Daniel while at AA&P (even offering to transport marihuana between Daniel and Perez).

Johnnie Amanda Blake, Daniel's ex-wife, and John Davis, an unindicted co-conspirator, testified that Cavazos removed marihuana from vehicles at AA&P and stored marihuana there.  Fernando Landeros, one of Daniel's mules, testified that Cavazos also met him at 4:00 AM at a hotel in Del Rio to pick up a load.[5]  Agent Robert Melton testified that Daniel hired Nico Prado and provided him with a truck[6] to pick up marihuana from Del Rio, during which trip Prado met with and was followed by Travis.[7]  Prado testified that Travis helped

---

[4] Daniel and Rodriguez failed to preserve their sufficiency challenges because neither renewed his motion for judgment of acquittal after offering evidence, so we review those claims for plain error only.  *United States v. Elam*, 678 F.2d 1234, 1248 (5th Cir. 1982) ("The failure to reurge the motion for acquittal, after introduction of defense evidence, constitutes a waiver of objection to the denial of the motions.").  The difference is immaterial, because the claims fail even under *de novo* review.

[5] Davis testified that Cavazos asked him to deliver marihuana to other people as well.

[6] Neal King, the man who sold Daniel the truck, testified that Daniel gave him Cavazos's AA&P business card when Daniel purchased the truck under the pseudonym "Daryl."

[7] Prado's phone records also showed telephone contact between himself and Daniel

5

him place a spare tire full of marihuana underneath his truck before Prado drove through a border patrol checkpoint. Finally, Prado testified that Travis picked up around five pounds of marihuana from Rodriguez on two or three occasions. Joel Flores, who dealt marihuana with Travis, testified that he met Rodriguez at AA&P and that he and Travis would purchase marihuana from Rodriguez—marihuana that Rodriguez got from Daniel.

There was not just testimony; the government offered excerpts from the defendants' phone records. Daniel's phone records showed distribution-related communications between himself and Perez—in addition to contact with his mules (Collins and Prado) and a potential buyer in Alabama (Charles Anthony Allison). A recorded telephone call from the county jail between Travis and Daniel included discussion of the conspiracy. Travis's phone records detailed his marihuana-dealing activity over the course of three to four years.

The government offered significant physical evidence of marihuana-distribution paraphernalia. The government seized bongs, pipes, $20,000 cash, scales, baggies, and marihuana wrappings from Rodriguez's trash and house. It offered firearms and ammunition, marihuana, wrappings, cash, and scales seized from the Longorias' house. Moreover, the government offered testimony from the forensic experts who tested the substances seized from the defendants, confirming that the substances were marihuana.

Finally, much of the above evidence sufficed to establish the quantities of marihuana distributed. John Davis testified that he held 30 to 40 pounds of marihuana once or twice per month for a year for Daniel and Cavazos, which alone amounts to 360 pounds (or, roughly 163 kilograms).[8] Johnnie Amanda

---

during this trip.

[8] There are a little more than 2.2 pounds in one kilogram, so those 360 pounds amount

No. 15-10579
No. 15-10590

Blake and her son, Chase Blake, said that they saw Daniel and Cavazos handling a couple of hundred pounds of marihuana at AA&P on multiple occasions. When Cavazos met Landeros at a hotel in Del Rio, he picked up a load of 300 pounds. Travis assisted Prado in attempting to transport more than 44 pounds (roughly 20 kilograms) of marihuana. Travis's own phone records showed he dealt marihuana in quantities ranging from a quarter pound to ten pounds over the course of three to four years. Finally, Flores testified that he and Travis picked up between ten and fifteen pounds of marihuana from Rodriguez. Also, Prado linked Rodriguez to AA&P, where Daniel and Cavazos dealt with hundreds of pounds.

Though the defendants allege they were not privy to every detail of the other co-conspirators' activity or the quantities involved, the "government need not prove knowledge of all the details of the conspiracy by any [defendant], but only that they had knowledge of the essential object of the conspiracy." *United States v. Acosta*, 763 F.2d 671, 691 (5th Cir. 1985). The preceding, non-exhaustive discussion of the evidence was sufficient for a reasonable jury to find the essential elements of a conspiracy (agreement, knowledge, and participation) and the quantities involved beyond a reasonable doubt for each defendant.[9]

---

to slightly more than 163 kilograms.

[9] The same evidence dooms the defendants' unpreserved material variance arguments—that the indictment charged one conspiracy but the evidence proved a different conspiracy—which we review only for plain error. *See United States v. Perez-Solis*, 709 F.3d 453, 465 (5th Cir. 2013). To prevail on plain-error review, a defendant must show (1) an error (2) that is clear or obvious and (3) that affects his substantial rights, and, assuming he shows the first three prongs, (4) that the court should exercise its discretion to correct the error because it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *See United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc). Assuming *arguendo* that a variance occurred, it did not affect any defendant's substantial rights because "the government establishe[d each] defendant's involvement in at least one of the proved conspiracies." *United States v. Mitchell*, 484 F.3d 762, 770 (5th Cir. 2007).

No. 15-10579
No. 15-10590

### III.

Rodriguez challenges the denial of his motion to sever, which we review for abuse of discretion. *United States v. Snarr*, 704 F.3d 368, 396 (5th Cir. 2013). To show an abuse of discretion, Rodriguez must prove "that: (1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration." *Id.* (internal quotation omitted). Generalized allegations of prejudice are insufficient, and Rodriguez "must isolate events occurring in the course of the trial and then . . . demonstrate that such events caused substantial prejudice." *Id.* (citations and quotations omitted). Moreover, he "must show that the instructions to the jury did not adequately protect him . . . from any prejudice resulting from the joint trial." *Id.* (internal quotation omitted).

Rodriguez claims only that the overwhelming evidence against his co-defendants caused a spillover effect and prevented the jury from treating his case individually. That is a generalized allegation—because he fails to isolate any events at trial that prejudiced the determination of his innocence or guilt—

---

The evidence also dispenses with the defendants' challenges to their sentences. An individual defendant's sentence for violating Sections 841 and 846 depends on the quantity of marihuana attributable to the entire conspiracy and reasonably foreseeable to him. *See United States v. Castillo*, 77 F.3d 1480, 1494–95 (5th Cir. 1996); U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2D1.1(c) (2014). We review the judge's fact-findings on both quantities for clear error only, *Castillo*, 77 F.3d at 1495, and conclude there was none. The defendants largely contest the quantities attributed to them by reference to the much lower amounts actually seized, but they ignore that even in the absence of seizure "the court shall approximate the quantity of the controlled substance," U.S.S.G. § 2D1.1 cmt. n.5, and may rely on "any information that has sufficient indicia of reliability to support its probable accuracy," *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005) (internal quotation omitted). At sentencing, the court explained the quantity attributed to each defendant by reference to the evidence presented at trial, which had sufficient indicia of reliability for the court to approximate the quantities reasonably foreseeable to each defendant. The court did not commit clear error, so we reject the defendants' challenges to their sentences.

No. 15-10579
No. 15-10590

that does not merit relief. Moreover, Rodriguez does not even allege that the specific instructions that the jury consider each defendant individually did not adequately protect him from prejudice.[10] The court did not abuse its discretion.

IV.

Rodriguez takes issue with the court's decision to instruct the jury on lesser-included charges over his objection. We review jury instructions for an abuse of discretion. *United States v. Monroe*, 178 F.3d 304, 307 (5th Cir. 1999). Rodriguez contends that the district court abused its discretion by giving a lesser-included instruction at the behest of the government because, Rodriguez avers, only a criminal defendant may make the strategic choice whether to request such an instruction. That claim does not merit relief.

"Any party may request in writing that the court instruct the jury on the law as specified in the request." FED. R. CRIM. P. 30(a). Under the plain language of the rule, the government, as a "party," may request a lesser-included instruction.[11] To the extent that our precedent is silent or uncertain, we now

---

[10] Rodriguez does not address the reality that the jury did consider his guilt or innocence individually, as evidenced by its verdict that he was guilty of a lesser-included offense of conspiring to distribute less than fifty kilograms of marihuana but each of his co-defendants was guilty of the same offense as to more than 100 kilograms.

[11] *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) ("A 'party' to litigation is '[o]ne by or against whom a lawsuit is brought.'" (quoting BLACK'S LAW DICTIONARY 1154 (8th ed. 2004)); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958) ("The Government as a litigant is, of course, subject to the rules of discovery."); *United States v. Dingle*, 114 F.3d 307, 312–13 (D.C. Cir. 1997) ("It has long been the rule in this circuit that in general, the trial judge should withhold charging on a lesser included offense *unless one of the parties requests it . . . .*" (emphasis added) (quotations and alterations omitted)); *United States v. Neiss*, 684 F.2d 570, 571 (8th Cir. 1982) (holding that defendant is entitled to a lesser-included instruction only if "a charge may be demanded by either the prosecution or defense"); *Schmuck v. United States*, 489 U.S. 705, 717 (1989) ("[T]he language of the Rule suggests that a lesser included offense instruction is available in equal measure to the defense and to the prosecution."); *see also United States v. Abeyta*, 27 F.3d 470, 473 n.5 (10th Cir. 1994) ("The government is just as free as defendant to seek a lesser included offense instruction . . . .").

No. 15-10579
No. 15-10590

clarify that both the government and a criminal defendant may demand an instruction on lesser-included offenses.

Rodriguez contends also that the court erred because the government requested the instruction orally rather than in writing. Rule 30 specifies that requests should be written, and that is of course the "better and safer practice," but "oral requests are sufficient if the court is clearly informed of the point involved." *Hull v. United States*, 324 F.2d 817, 824 (5th Cir. 1963). Rodriguez and the government expressed fully their concerns about the instruction in a lengthy colloquy with the judge before submitting the case to the jury. The discussion between the court and counsel took up around ten pages of trial transcript and covered (1) whether to give the lesser-included instruction at all and (2) what form it should take. That was sufficient to inform the court of the point involved.[12]

AFFIRMED.

---

[12] Because the government sufficiently requested the instruction, we need not address Rodriguez's related claim that the court erred by giving it *sua sponte*. Assuming *arguendo* that the government's request were insufficient, nothing in Rule 30 prohibits the court from issuing the instruction *sua sponte*, and Rule 31 seems to support its doing so. *See* FED. R. CRIM. P. 31(c) ("A defendant may be found guilty of any of the following: (1) an offense necessarily included in the offense charged . . . ."). Also, precedent at least suggests that a district court has the power to do so. *See, e.g., United States v. Mays*, 466 F.3d 335, 342 (5th Cir. 2006) (holding that the court did not commit plain error by failing to give lesser-included instruction where counsel made strategic choice to argue for outright acquittal); *United States v. Estrada-Fernandez*, 150 F.3d 491, 495–96 (5th Cir. 1998) (same where counsel argued for outright acquittal and failed to object when court denied other defendant's request for lesser-included charges). If the court lacked the power to give the instruction *sua sponte*, then *Mays* and *Estrada-Fernandez* would have so stated rather than reviewing for plain error.