United States Court of Appeals
Fifth Circuit

**F I L E D**

September 3, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**NO. 04-20092**
_____

**RANDALL M. THOMPSON,**

**Plaintiff-Appellant,**

**versus**

**SYNTROLEUM CORPORATION,**

**Defendant-Appellee.**

_____

**Appeal from the United States District Court
for the Southern District of Texas
Civil Action No. H-02-4169**

_____

Before REAVLEY, JONES and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Randall M. Thompson ("Thompson") filed a breach of contract action against Defendant-Appellee Syntroleum Corporation ("Syntroleum") for failure to pay severance upon termination of Thompson's employment. On cross motions for summary judgment, the district court granted Syntroleum's motion, and Thompson appealed. At bar is whether the district court erred in finding that no genuine issue of material fact existed as to

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Thompson's termination and that Syntroleum was entitled to judgment as a matter of law.

For the reasons stated below, we find that the district court erred in granting Syntroleum's motion for summary judgment. Accordingly, we vacate the district court's grant of summary judgment and remand for further proceedings.

## I.  Background

Syntroleum employed Thompson as its Chief Financial Officer from late 1996 through September 30, 2002. The employment contract at issue became effective on June 17, 1999. In relevant part, the employment contract provides the following:

> 13.  <u>Term and Termination</u>
> (b)  Employment or Employee under this Agreement may be terminated
> . . .
> (iv)  by mutual agreement of Employee and the Company.
> . . .
> (vi)  by the Company for just cause at any time upon written notice.  . . .
> (vii) by either the Company or Employee upon 60 days written notice.  . . .
> (d)  If Employee's employment is terminated pursuant to the terms of this agreement for any reason, Employee shall be entitled to all arrearage [] of salary and expenses up to and including the date of termination but shall not be entitled to further compensation. Provided, that if at any time after the first 12 months from the date of the Original Employment Agreement, Employee's employment is terminated by the Company for any reason other than Employee's death, disability or retirement, the Company's dissolution or just cause as provided in Paragraphs 13 (b) (i), (ii), (iii), (iv) or (v), respectively, Employee shall be entitled to and the Company shall pay

> Employee all arrearage [] of salary and expenses up to and including the date of termination and, in addition, Employee's monthly base salary for an additional period of 24 months.

In relevant summary, the contract provides that involuntary termination of an employee without just cause entitles the employee to severance, while voluntary resignation of an employee by mutual agreement with the company divests an employee of the severance entitlement.

During his tenure with Syntroleum, Thompson principally attended to the Sweetwater Project ("Sweetwater"), an initiative involving construction of a plant to convert natural gas to liquids. He worked primarily from his Houston, Texas home, making weekly visits to Syntroleum's headquarters in Tulsa, Oklahoma.

In May 2002, Ken Agee ("Agee"), Chairman of Syntroleum's Board of Directors, asked Thompson to relocate to Syntroleum's headquarters. When Thompson declined, Agee told him that Syntroleum would terminate his employment for failure to relocate and directed him to prepare a severance proposal. Shortly thereafter, Agee changed his mind, told Thompson that Syntroleum would continue his employment, and said, "Let's see how it goes." Thompson maintains that he construed the term "it" to refer to Sweetwater and believed that his continued employment depended upon the project's success.

On or about July 17, 2002, Agee told Thompson that he would recommend that Syntroleum abandon Sweetwater. Thompson

3

maintains that he told Agee that if Syntroleum abandoned Sweetwater, he would contact human resources and prepare a severance proposal, to which Agee said "OK." Thompson considered Agee's statement an affirmative acknowledgment that if Syntroleum abandoned Sweetwater, it would also terminate his employment, entitling him to severance. Thompson submitted his own affidavit recounting several interactions with Syntroleum's human resources director in furtherance of this understanding.

Recounting a significantly different response, Syntroleum maintains that Thompson told Agee that if Syntroleum abandoned Sweetwater, he would quit and prepare a severance proposal, to which Agee said "OK." According to Syntroleum, Agee's statement was an acknowledgment not of termination by Syntroleum or Thompson's entitlement to severance, but only of Thompson's voluntary decision to quit if Syntroleum abandoned Sweetwater. Syntroleum submitted deposition testimony of four persons to whom Thompson purportedly made similar statements regarding his intent to quit.

Syntroleum eventually abandoned Sweetwater, and on September 9, 2002, Syntroleum informed Thompson in writing that his July 17 resignation was effective September 9, that the Compensation Committee denied Thompson's request for severance, and that Syntroleum would pay Thompson's regular salary through September 30, 2002.

4

## II. Discussion

Upon reviewing the district court's summary judgment decision de novo and applying the same standards as that court, Sholdra v. Chilmark Fin. L.L.P. (In re Sholdra), 249 F.3d 380, 382 (5th Cir. 2001), we find that the district court erred in granting Syntroleum's motion for summary judgment because genuine issues of material fact determinative of Syntroleum's liability are in dispute.

Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56, summary judgment is only appropriate when the movant demonstrates that no genuine issue of material fact is in dispute and that it is entitled to judgment as a matter of law. Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731 (1999); FED. R. CIV. P. 56(c). A fact is "material" if its resolution is outcome determinative. Ginsberg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994). An issue is "genuine" if the evidence is sufficient for a reasonable fact-finder to find in favor of the non-movant. Id.

A court must view the evidence and all justifiable inferences in the light most favorable to the non-movant, and may not sit as a factfinder, i.e., weigh evidence or evaluate witness credibility. Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 91 L.Ed.2d 202 (1986)). While

the issue of state of mind is not per se preclusive, summary judgment on this issue is discouraged because intent is a question of fact quintessentially within the province of the factfinder. <u>Sanders v. English</u>, 950 F.2d 1152, 1164 (5th Cir. 1992); <u>Int'l Shortstop v. Rally's</u>, 939 F.2d 1257, 1263 (5th Cir. 1991); <u>Hayden v. First Nat'l Bank</u>, 595 F.2d 994, 997 (5th Cir. 1979).

All elements precluding summary judgment are present in the instant case. Thompson's termination status - - - whether Syntroleum involuntarily terminated him without just cause or whether he voluntarily resigned - - - is a contested fact because the parties advance contradictory positions with supporting documentation. The circumstance of Thompson's termination is material because it affects the applicability of the contract's severance provision: involuntary termination triggers the entitlement, voluntary resignation does not. The issue is genuine because the record evidence is sufficient for a reasonable factfinder to reach the district court's conclusion or to discredit the evidence propounded by Syntroleum in favor of the evidence presented by Thompson. Resolution either way will require a factfinder to credit deposition testimony and accord weight to the parties' competing versions of the facts. Under these circumstances, the district court's grant of summary judgment was erroneous.

## III. CONCLUSION

6

For the reasons discussed above, the district court's grant of summary judgment is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED**.