# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50635

United States Court of Appeals
Fifth Circuit

**FILED**
August 20, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellant,

v.

SAMUEL TANEL CRITTENDEN,

Defendant – Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:17-CR-2039-2

Before DENNIS, ELROD, and COSTA, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

A jury convicted Samuel Crittenden and his wife Carla Dominguez of possession with intent to distribute 500 grams or more of methamphetamine. The district court granted Crittenden a new trial because the record does not show that he knew that the bags he removed from his house—and the bag his wife requested that he bring her—contained methamphetamine or any other controlled substance. Because the district court did not abuse its discretion in granting Crittenden a new trial, we AFFIRM.

No. 18-50635

## I.

## A.

In 2017, Federal Bureau of Investigation agents received a tip from the Drug Enforcement Agency field office in Juarez, Mexico, that ten pounds of methamphetamine was being stored at a house in El Paso. The FBI agents enlisted a cooperating informant to call Dominguez's phone number, which was associated with the tip, in order to arrange a controlled methamphetamine purchase. In a series of phone calls over the next few days, Dominguez and the informant discussed the informant's ostensible interest in "windows"—a street term for methamphetamine. The informant met Dominguez in person in the parking lot of a JCPenney where they discussed the sale of "crystal," and the informant offered to buy "ten" for $35,000. The two agreed to meet again after Dominguez had verified how much supply she had.

After the meeting, the agents surveilled Dominguez as she returned to the house she shared with Crittenden. Thereafter, the agents observed the two depart the home in separate cars. One of the agents followed Crittenden to another home on Byway Drive in El Paso, where Crittenden exited his vehicle and went inside. The agent broke off the surveillance and rejoined the remaining agents that had continued to surveil Dominguez. Dominguez, however, ultimately led the agents back to the Byway Drive residence. The agents observed a male who was likely Crittenden[1] exit the house and hand Dominguez a black bag through the window of her car.

Dominguez then drove away from the house. When law enforcement intercepted her, they found a black leather handbag containing ten bundles of

---

[1] The agents testified that it was getting dark and they failed to get a good enough look at the male figure to identify him as Crittenden, but they further stated that Crittenden admitted to handing Dominguez the bag during a subsequent police interview. Dominguez also testified that it was Crittenden that handed her the bag.

methamphetamine collectively weighing 4.2 kilograms. Law enforcement then interviewed Crittenden. According to the agents' later testimony, Crittenden stated that he had moved the bags—which were Dominguez's—to the Byway Drive residence, believing that they contained marijuana. When Dominguez asked him to retrieve one of the bags for her, he did so. A resident of the Byway Drive house would later testify that Crittenden had asked him if he could stay at the Byway Drive house and store some personal effects in the attic because he was having a fight with Dominguez. After receiving consent from the residents of the Byway Drive house to search the attic, law enforcement recovered three roller suitcases filled with 1.65 kilograms of methamphetamine and 47 kilograms of marijuana.

B.

Dominguez and Crittenden were charged in the Western District of Texas with (1) conspiracy to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); (2) possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); and (3) conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 846.

At trial, Dominguez took the stand as the sole witness for the defense. She testified that she used to buy marijuana for her and her friends' personal use from an individual named Juan Diaz. Dominguez stated that this relationship ended when, in 2015, she and Crittenden decided to have a fifth child together and resolved "to get closer to God and to take care of [their] family together without having any kind of partying or drug use." She said that she did not hear from Diaz again until he called her in January of 2017 and asked her if she could retrieve his car, which he said had been left on the

No. 18-50635

U.S. side of the border as a result of a fight he had with his girlfriend, and hold it at her house until his sister could pick it up the following day. Dominguez testified that she agreed and retrieved the car, but when Juan's sister arrived, she took several bags and a large plastic container out of the trunk, gave them to Dominguez, and quickly left before Dominguez could object.

With regard to the series of phone calls, Dominguez testified that she first did not understand what the calls concerned and assumed they were in regard to some broken windows in her house. When the calls continued, Dominguez stated, she began to suspect that the packages contained drugs or other contraband and that her and her family's lives were in danger, so she went along with meeting the individuals who contacted her in order to get rid of the packages. Dominguez stated that when she told Crittenden about what was occurring, Crittenden said that he did not want to have anything to do with the matter and that he did not want the packages to be in the house with their children. According to Dominguez, Crittenden then moved the packages to the Byway Drive residence to get them out of the house.

Dominguez testified that she just instructed Crittenden to "grab a bag" from the Byway Drive house on the day she met with the informant without specifying the contents of the bag. She stated that Crittenden was not involved in any of the transactions and did not know Diaz.

Following the close of evidence, the jury convicted both defendants on all counts.

C.

Crittenden then renewed a properly preserved motion for judgment of acquittal, or, in the alternative, for a new trial. The district court granted the motion for a new trial. In its memorandum opinion, the district court concluded that the Government failed to prove that Crittenden participated in

4

a conspiracy or that he had the knowledge of the nature of the controlled substance he possessed that was required to convict him of possessing methamphetamine with the intent to distribute. As to the possession count, the court stated,

> [N]o direct or circumstantial evidence was presented during the first trial to show beyond a reasonable doubt that Mr. Crittenden knew the contraband was comprised of any controlled substances listed on the schedules or that he knew the identity of the controlled substances he possessed.
>
> . . . .
>
> The Government argues that the second element was established because Mr. Crittenden had knowledge. To support its argument, the Government specifically points to the moment in which Mr. Crittenden was questioned by authorities and he admitted that he moved what he believed to be marijuana. But, because the Court finds that belief is not enough to establish knowledge, it disagrees with the Government and adheres to the definition laid out by the Supreme Court in *McFadden* [*v. United States*, 576 U.S. 186 (2015)]. In *McFadden*, the Supreme Court determined that knowledge can only be established in two ways: either by knowledge that a controlled substance is listed or by knowledge of the identity of a scheduled controlled substance.
>
> Here, neither of these definitions was established beyond a reasonable doubt by the Government. Any proof—direct or circumstantial—that was introduced during the first trial failed to show that Mr. Crittenden knew the contraband was comprised of any controlled substances listed on the schedules or that he knew the identity of the controlled substances he possessed. Mr. Crittenden never opened the bags to see what was inside. He placed the bags in several suitcases and immediately removed them to the Byway residence, away from his home and family. This testimony, viewed, in the context of all of the evidence offered during the first trial shows, at most, that Mr. Crittenden believed the bags contained something illegal. More specifically, the testimony shows, if anything, that Mr. Crittenden believed the bags contained marijuana. The Court finds this thought or belief insufficient to establish knowledge.

No. 18-50635

The Government timely appealed the grant of new trial on the possession count.[2] It did not appeal the grant of new trial on the conspiracy counts.

## II.

Unlike a judgment of acquittal based on the sufficiency of the evidence, which this court reviews *de novo* while taking the evidence in the light most favorable to the verdict, "the decision on a new trial motion is entrusted to the discretion of the district court so [this court] will reverse it only on an abuse of that leeway." *United States v. Hoffman*, 901 F.3d 523, 552 (5th Cir. 2018). This court thus reviews a district court's grant of a new trial for abuse of discretion, while considering de novo any questions of law that figured into the determination. *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996) (considering whether a district court abused its discretion by accounting for improper factors in departing from sentencing guidelines).

A district court may grant a new trial under Federal Rule of Criminal Procedure 33(a) "if the interest of justice so requires." "In this Circuit, the generally accepted standard is that a new trial ordinarily should not be granted 'unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict.'" *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (quoting *Wall*, 389 F.3d at 466).

---

[2] After filing its notice of appeal, the Government moved in the district court for reconsideration. After the district court initially denied the motion for lack of jurisdiction due to the pending appeal, this court granted a limited remand to allow the district court to reconsider the motion. Thereafter, the district court denied reconsideration for the reasons stated in its memorandum opinion.

No. 18-50635

III.

On appeal, the Government argues that the district court "erroneously found that the government had failed to prove . . . that Crittenden *knowingly* possessed a controlled substance."[3]   The Government contends that it "provided ample evidence of Crittenden's knowledge," namely (1) testimony that Crittenden moved the bags to the Byway Drive house, (2) testimony that Crittenden retrieved a bag containing methamphetamine on Dominguez's request, and (3) some agents' testimony that Crittenden told them he "thought the bags contained marijuana."   We conclude that the district court correctly stated the relevant law and permissibly applied it to the facts of this case.

As to the governing legal principles, the district court properly noted that the "knowledge requirement [of § 841(a)] may be met by showing that the defendant knew he possessed a substance listed on the schedules." *McFadden v. United States*, 576 U.S. 186, 192 (2015).   The district court also properly concluded that a defendant's mere "belief" that he possessed a controlled substance—divorced from other factors such as deliberate ignorance—"is not enough to establish knowledge."   *See United States v. Araiza-Jacobo*, 917 F.3d 360, 366 (5th Cir. 2019) (noting that allowing a jury to convict based on a defendant's "negligent or reckless ignorance . . . would dilute the *mens rea*

---

[3] The Government alternatively challenges the district court's oral statements indicating disagreement with the mandatory minimum sentence that Crittenden faced.  We know of no authority that requires us to consider a court's oral reasons for granting a new trial when they differ from those in a written opinion, and we decline to do so.  *Cf. Ellison v. Shell Oil Co.*, 882 F.2d 349, 352 (9th Cir. 1989) (declining to review a district court's oral reasons for granting a directed verdict when they differed from those in its written order).  Similarly, although the dissenting opinion makes much of the district court's offhand comment at a status conference that he could "get reversed" by "the Fifth Circuit," such musings do not alter our legal analysis.  This district court is far from the first to wonder whether this court will reach a contrary conclusion.  *See, e.g., Montanya v. United States*, 2012 WL 2946586, at *5 (S.D. Tex. July 17, 2012) (Lake, J.) ("I'm not always right.  Sometimes the higher courts reverse me. . . . That's the way the system works.  I don't like to be reversed, but it happens once in a while.").

requirement to a weak '*should* have known' standard, which eviscerates the law's requirement that the defendant acted 'knowingly'"); *Flores-Larrazola v. Lynch*, 840 F.3d 234, 238 (5th Cir. 2016).

In some instances, the knowledge element of a controlled substance offense can be satisfied when a defendant knows there is a high probability that he possesses drugs but deliberately endeavors to avoid confirming those suspicions. *See United States v. Oti*, 872 F.3d 678, 697 (5th Cir. 2017); *United States v. Restrepo-Granda*, 575 F.2d 524, 529 (5th Cir. 1978). However, the Government has never argued deliberate ignorance in this case, and the jury was not instructed on it. We therefore express no opinion regarding whether the evidence demonstrated Crittenden's deliberate ignorance.

The Government fares no better on the facts. There was no evidence that the methamphetamine at issue belonged to Crittenden or that Crittenden was attempting to sell the drugs; rather, federal agents seized the methamphetamine from Dominguez pursuant to a transaction the confidential informant set up with Dominguez. Although the jury originally convicted Crittenden of conspiring with Dominguez to sell the drugs, the evidence supposedly showing Crittenden's involvement in any such conspiracy was so insufficient that the Government did not even appeal when the district court granted a new trial on the conspiracy counts.

In fact, the evidence does not show that Crittenden ever laid eyes on the drugs themselves—not when he moved the bags into the Byway Drive residence, and not when he retrieved a bag on Dominguez's instructions. At oral argument, the Government pointed to Dominguez's testimony that Crittenden "probably" moved the drug packages from their original container to the bags before moving them to the Byway Drive residence. Oral Argument at 7:30. But Dominguez also admitted that she "wasn't there" when the drug

packages were moved into the bags and therefore "wouldn't be able to tell you if it was [Crittenden] or someone else."[4]  At any rate, the district court was not required to credit Dominguez's testimony in granting the motion for new trial. *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997) ("The trial judge may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial."); *United States v. Arnold*, 416 F.3d 349, 361 (5th Cir. 2005) (noting that the district "court has the authority to make its own determination regarding the credibility of witnesses" on a Rule 33 new trial motion).

Despite the Government's repeated prodding, Dominguez expressly disavowed telling Crittenden that the bag she asked him to retrieve contained any drugs at all, testifying instead that she told Crittenden to "just grab a bag." The evidence shows only that Crittenden complied with Dominguez's request by bringing her a bag.  Nothing more.

Some FBI agents testified that Crittenden told them that he "believed"— incorrectly, as it turned out—that "the bags contained marijuana."[5]  That is why he "removed them . . . from his home and family" by putting them in the Byway Drive house.  But, as previously explained, the district court properly concluded that testimony "show[ing], if anything, that Mr. Crittenden believed

---

[4] Moreover, the drugs themselves do not appear to have been visible through the thick packaging.  An officer testified that, when he opened the black bag seized from Dominguez, he had to "cut into one of the bundles" to "s[ee] the crystallized product inside."

[5] The Government argues that it would have been an abuse of discretion for the district court to have concluded that mistaken "knowledge" that the bags contained marijuana instead of methamphetamine would be insufficient to satisfy the *mens rea* requirement under *McFadden. See* 576 U.S. at 186.  However, the district court did not base its new trial grant on any such reasoning.  Instead, the district court concluded that "*belief* is not enough to establish *knowledge*" sufficient to satisfy the *mens rea* requirement.  Because the evidence did not show "that Mr. Crittenden knew the contraband was comprised of *any* controlled substances listed on the schedules," the district court granted a new trial.  The district court was within its discretion to grant a new trial under these circumstances.

the bags contained marijuana" is insufficient to prove knowledge. As a result, it was not an abuse of discretion for the district court to grant Crittenden a new trial on the basis of insufficient evidence of knowledge.

The dissenting opinion grounds its contrary analysis in respect for the role of juries in our system of government—a respect that we wholeheartedly share. *See* Jennifer Walker Elrod, *W(h)ither the Jury? The Diminishing Role of the Jury Trial in our Legal System*, 68 Wash. & Lee L. Rev. 3 (2011). Indeed, as John Adams observed in 1774, juries "are the heart and lungs of liberty." *Id.* at 8 (quoting Thomas J. Methvin, *Alabama the Arbitration State*, 62 Ala. Law. 48, 49 (2001)). Trial courts, on which all three members of this panel have served, generally agree that "juries almost always get it right." Jennifer Walker Elrod, *Is the Jury Still Out?: A Case for the Continued Viability of the American Jury*, 44 Tex. Tech L. Rev. 303, 320 (2012).

It is therefore unsurprising that some states, like Texas, have essentially disallowed judges from re-weighing a jury's determinations on "a witness's credibility, and the weight to be given to their testimony" in criminal cases. *Brooks v. Texas*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (quoting *Lancon v. Texas*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Yet we are bound by the law of this circuit, which has long afforded district courts "considerable discretion with respect to Rule 33 motions." *United States v. Jordan*, 958 F.3d 331, 338 (5th Cir. 2020) (quoting *United States v. Simmons*, 714 F.2d 29, 31 (5th Cir. 1983)). Indeed, this court has stated that a district court may grant a new trial even where "the evidence is sufficient to support a conviction," if, upon "cautiously reweigh[ing] it," the district court concludes that the evidence "preponderate[s] heavily against the guilty verdict." *United States v. Herrera*, 559 F.3d 296, 302 (5th Cir. 2009).

No. 18-50635

The advantages or disadvantages of these respective systems are not relevant to the disposition of this appeal, which is governed by the law of this circuit. Nor is it relevant whether, sitting as jurors, members of this panel would have voted to convict. The district court is much better equipped than this court to carry out evidentiary functions, which is why "[i]n our capacity as an appellate court, we must not revisit evidence, reevaluate witness credibility, or attempt to reconcile seemingly contradictory evidence." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005). Moreover, as we have explained, our precedent does not permit us to reverse a new trial grant merely because "the evidence is sufficient to support a conviction." *Herrera*, 559 F.3d at 302.

Here, the district "court did not simply disregard the jury's verdict in favor of one it felt was more reasonable." *Robertson*, 110 F.3d at 1119. Instead, "it cautiously reweighed the evidence implicating [Crittenden] and determined that a mistake had been committed. On this basis, having given full respect to the jury's findings, and to prevent a miscarriage of justice, it granted a new trial." *Id.* at 1119–20.

* * *

For the forgoing reasons, the district court's order granting a new trial is AFFIRMED.

11

GREGG COSTA, Circuit Judge, dissenting:

The Constitution twice says that juries decide criminal cases. U.S. CONST. art. III, § 2, cl. 3; *id.* amend. VI. The jury right's reappearance in the Sixth Amendment is no encore. The Bill of Rights includes the jury right among many guarantees for criminal defendants, whereas Article III requires juries as a structural protection. This original jury requirement ensures that unelected judges are not the only actors in our judiciary. "Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." *Blakely v. Washington*, 542 U.S. 296, 306 (2004); *see also* AKHIL REED AMAR, AMERICA'S CONSTITUTION: A BIOGRAPHY 237 (2005). Article III's command that all trials "shall be by Jury" is why, for the first century of our Republic, a defendant could not elect to have a judge decide his fate. *See Thompson v. Utah*, 170 U.S. 343, 353–55 (1898); *Home Ins. Co. v. Morse*, 87 U.S. (20 Wall.) 445, 451 (1874) (citing *Cancemi v. People*, 18 N.Y. 128 (1858)); *see also Patton v. United States*, 281 U.S. 276 (1930) (allowing bench trials); Recent Development, *Accused in Multiple Prosecution Held to Have Absolute Right to Waive Jury Trial*, 59 COLUM. L. REV. 813, 814 (1959) ("Until shortly after the turn of the century, the federal courts and most state courts applied the common law rule that a jury trial can not be waived in a felony case in which the defendant enters a plea of not guilty."). In other words, the jury right is as much about jurors as it is about defendants. *Cf. Powers v. Ohio*, 499 U.S. 400, 409 (1991) (holding that prospective jurors have the right not to be excluded based on race).

The jury's constitutional role in deciding criminal trials leaves little room for judicial second-guessing. Our review of verdicts is therefore quite limited. *See, e.g.*, *Burks v. United States*, 437 U.S. 1, 16–17 (1978). Likewise, the authority to grant a new trial when there is enough evidence to support the

verdict, but the judge would weigh the evidence differently, is in some tension with Article III and the Sixth Amendment. As a result, although we review the grant of a new trial only for abuse of discretion, we have repeatedly warned that its discretion is not unbridled. *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005); *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997). Above all, a district court cannot use the new-trial power to "usurp the jury's function." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005); *see also Arnold*, 416 F.3d at 360; *Robertson*, 110 F.3d at 1118. Only "exceptional" circumstances warrant the strong medicine of a "thirteenth juror." *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971) (Wisdom, J.) (quoting 2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 553, at 487 (1969)).

To prevent judges from too often taking a seat in the jury box, a district court may grant a new trial only when the evidence weighs so heavily against the verdict "that it would be a miscarriage of justice to let the verdict stand." *Arnold*, 416 F.3d at 360 (citation omitted); *see also* FED. R. CRIM. P. 33(a) (allowing court to grant new trial if "the interest of justice so requires"). Those words bear repeating—a miscarriage of justice. The jury's verdict in this case comes nowhere close to that. Indeed, far from a case in which the evidence "preponderate[d] heavily against the verdict," *Arnold*, 416 F.3d at 360, the great weight of the evidence supported this one.[1]

Beaucoup evidence showed that Crittenden knew he possessed a controlled substance. I'll start with what should end the matter: Crittenden

---

[1] The majority thinks it significant that the government did not appeal the grant of a new trial on the conspiracy count. Maj. Op. 8–9. But there would be no practical benefit from reinstating that verdict as well. The conspiracy count and the substantive count carry the same statutory penalties and Guidelines range. 21 U.S.C. § 846; U.S.S.G. § 1B1.3.

said as much. When agents confronted him about handing the bag to Dominguez, he told them that he "thought" or "believed" it contained marijuana. The district court reasoned that, "if anything," Crittenden's confession showed merely that he "believed the bags contained marijuana." So apparently the validity of the verdict rendered by twelve citizens turns on whether the defendant said "I believed" instead of "I knew." This belief/knowledge distinction defies real life. People don't use the *mens rea* terms found in the United States Code when confessing. And they often try to hedge their culpability. The jury recognized Crittenden's confession for what it was. It's because of their broader understanding of everyday situations and language that jurors are better positioned to decide the facts than judges trained in the law. As this case shows, we have a proclivity for how-many-angels-can-dance parsing.

It gets worse. The confession is direct evidence of knowledge. But most drug cases rely on circumstantial evidence to prove state of mind. *See United States v. Cano-Guel*, 167 F.3d 900, 904 (5th Cir. 1999). There was plenty of that here too. Yet the district court ignored most of it, focusing only on the confession that the court rationalized away. That failure to grapple with other incriminating evidence alone is an abuse of discretion. *See Hernandez v. Lynch*, 825 F.3d 266, 271–72 (5th Cir. 2016) (holding that the BIA abused its discretion when it ignored evidence that counseled against its ruling); *United States v. Ouedraogo*, 531 F. App'x 731, 745 (6th Cir. 2013) (unpublished) (reversing grant of new trial because the district court's "rationale . . . overlook[ed], or improperly discount[ed], much of the evidence").

Overlooking the circumstantial evidence is a more glaring problem because it is so compelling. Dominguez testified that she and Crittenden were worried about having the plastic tub in their house because they "assumed that

14

it was drugs." She said that Crittenden wanted the tub out of their house and that he "probably" put its contents into the suitcases because she did not. *See United States v. Ayala-Tapia*, 520 F.3d 66, 69 (1st Cir. 2008) (explaining that defendant's packing heavily wrapped drugs in suitcase could support inference of knowledge because legal substances would not need such heavy wrapping). Crittenden then took the suitcases to his friend's house on Byway. Critically, when Dominguez needed to deliver ten bundles of methamphetamine for the sale, Crittenden went alone to retrieve that exact amount of the drug from the stash—a stash that also included marijuana. The jury understood that it's ridiculous to think that Crittenden randomly picked one of several bags without knowing its contents and happened to select one that contained exactly ten bundles of methamphetamine and no marijuana. Would Crittenden have risked retrieving the wrong drugs or quantity given the testimony the defense elicited about how dangerous the drug trade is? *Cf. United States v. Araiza-Jacobo*, 917 F.3d 360, 368 (5th Cir. 2019) (explaining that large quantity of drugs—5.1 kilograms of methamphetamine—showed knowledge because "a drug trafficker would not have entrusted the shipment to an untested courier").

The majority opinion at least acknowledges this circumstantial evidence. But it downplays its strength with diversionary points about Crittenden not owning, selling, or laying his eyes on the drugs. Maj. Op. 8–9. That last point ignores the only reasonable inference that can be drawn from the evidence: Crittenden moved the drugs out of the tub and into the suitcases before he transported them to the Byway residence. His wife—whom the majority otherwise views as an unrivaled truthteller—said that was "probably" the case and, other than her, who else in their home would have transferred the drugs from the tub to the suitcases? The majority also apparently believes that Crittenden and Dominguez left to chance the potentially life-or-death decision

15

of picking a suitcase that contained the right type and amount of drugs—and then just happened to guess right!

Courts in this circuit tell every jury, "The law makes no distinction between the weights to be given either direct or circumstantial evidence." FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 1.08 (2019); *see also McFadden v. United States*, 576 U.S. 186, 192 n.1 (2015). Jurors are not the only people in the courthouse to whom that instruction applies. Failure to give any meaningful weight to the substantial circumstantial evidence of Crittenden's knowledge warrants reversal. *See United States v. McCarter*, 250 F.3d 744, 2001 WL 274753, at *3 (5th Cir. Feb. 23, 2001) (unpublished per curiam) (reversing new-trial grant when district court concluded that evidence of knowledge was circumstantial); *see also United States v. Campos*, 306 F.3d 577, 580 (8th Cir. 2002) (reversing new-trial grant because the district court discounted circumstantial evidence of intent to distribute).

Because granting Crittenden a new trial based on the weight of the evidence defies these basic principles, it should not be surprising that the ruling may not have had much—if anything—to do with the evidence of knowledge. The majority buries in a footnote this elephant in the room: that the grant of a new trial related to concerns about the then-applicable minimum sentence. Maj. Op. 7 n.3. It tersely concludes that it is not required to consider a judge's on-the-record comments when they don't reappear in the written ruling.

But the sequence of events speaks for itself. The district court granted the new-trial motion in a one-page order that said an opinion would follow. That order did not mention anything about weak evidence of knowledge. And despite the fact that the evidence presented at trial would have been freshest

in the court's mind when it granted the motion, it took five months to give a reason for doing so.

At a status conference after it finally issued the order explaining the new-trial grant, the court added:

> **I think if it was up to the Fifth Circuit I'm going to get reversed, quite frankly**, but I went over the PSR this morning. Mr. Crittenden is facing 292 to 365 months and I think that's the reason I considered . . . granting a new trial because I was very reluctant to issue that type of sentence.

The district court doubled down at Dominguez's sentencing:

> Counsel, as I informed you sometime back, maybe last week, I'm going to grant a new trial for Mr. Crittenden.
>
> I am—his guideline range is 292 to 365 months and he's facing a 20-year mandatory minimum. I can't . . . even go the 20-year mandatory minimum on him and I'm certainly not going to go 292 months.
>
> He had a limited role in what his wife was doing and she got him into this. Very limited role.

At the end of the hearing, the district court turned its attention back to Crittenden. It warned: "Mr. Crittenden, you're facing 292 to 365 months. If you go to trial again and you lose, those guidelines are not going to change and I've given you every opportunity."

There is nothing in either of the district court's discourses about believing ≠ knowing—only a repeated concern about the sentence Congress required. The district court's concern was not unfounded; Congress has since agreed with its view and reduced the minimum sentence Crittenden would face. But another standard jury instruction applies to judges as well: When

17

deciding guilt, "[y]ou should not be concerned with punishment in any way." [2] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 1.22 (2019); *see also United States v. Merlino*, 592 F.3d 22, 34 (1st Cir. 2010) (explaining that a district court's concern about a defendant's lengthy mandatory sentence undermined its decision to grant a new trial).

Much to the district court's surprise, we are allowing it to throw out the jury's verdict. That raises another point. What is going to be different at the next trial? In other words, won't another guilty verdict be just as much of a "miscarriage of justice" as this one? The evidence showing knowledge won't change, so we may be starting a cycle of citizens serving as jurors in this case only to see their work undone. If the court thinks there is actually insufficient evidence to support guilt[3]—a determination that results in an acquittal rather than a new trial—then it should just say so and save future jurors the hassle. Otherwise, it should not require a new trial merely because of disagreement about state of mind, the quintessential fact issue that juries get to decide. *See Thompson v. Syntroleum Corp.*, 108 F. App'x 900, 902 (5th Cir. 2004) (explaining that summary judgment on "state of mind" questions is "discouraged because intent is a question of fact quintessentially within the province of the factfinder"). Indeed, the majority opinion cites no case affirming a new-trial grant based on a judge's disagreement with how a jury weighed evidence on the inference-laden question of knowledge.

---

[2] Under the First Step Act, Crittenden faces a ten rather than twenty-year minimum. That new law would apply whether we reinstate the guilty verdict from the first trial or the jury at a new trial returns another one. In either case, the sentencing would occur after the effective date of the First Step Act. *See United States v. Gomez*, 960 F.3d 173, 177 (5th Cir. 2020).

[3] It apparently does, seeing as it states that the district court granted a new trial "because the record does not show that he knew the bags . . . contained methamphetamine or any other controlled substance." Maj. Op. 1.

No. 18-50635

Ultimately, this case pits the deference we owe district judges on discretionary matters against the deference judges owe juries. Both the district judge and the jury saw and heard the evidence. *See* Maj. Op. 11 (correctly noting the importance of hearing evidence live as opposed to reading a cold record). Between the two, the choice is easy given the overwhelming evidence of Crittenden's guilt. I go with the citizens who missed work and had to rearrange family responsibilities because they showed up to do their civic duty. When it comes to commonsense questions like the ones this trial posed, the perspective of a single judge is no match for the collective wisdom that a jury of varied backgrounds and experiences brings to bear.

Yet the district court—now with our court's blessing—concluded that the cross-section of the El Paso community that found Crittenden guilty committed a miscarriage of justice. (I guess I too would have been party to that miscarriage of justice as I think the jury got it right.) This judicial override of the jury's verdict disrespects their service.

19